Stephen LIBBY, Plaintiff,

v.

**TRANSAMERICA OCCIDENTAL LIFE INSURANCE CO. and Provident Life and Accident Insurance Company, Defendants.**

Civ. No. 89–0089–P.

United States District Court,
D. Maine.

May 7, 1990.

---

Robert H. Avaunt, Zuckerman, Avaunt & Devine, Gray, Me., for plaintiff.

William J. Kayatta Jr., Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, Me., for defendants.

## MEMORANDUM AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION TO AMEND

GENE CARTER, Chief Judge.

Plaintiff in this action was employed in Maine by Adjuster's Auto Rental, Inc. and was issued health insurance under a group insurance plan issued by Defendant Transamerica.[1] While covered by this plan, Plaintiff was seriously injured in an accident. After the accident, Plaintiff's employer went into bankruptcy and its group insurance policy was terminated. Under a provision in the group policy [2] continuing coverage for persons totally disabled at the time of policy termination, Plaintiff received insurance coverage until February 1, 1988.

In this action Plaintiff seeks a declaration that the benefits available to him under the group policy must, under Maine law, be converted to a policy providing similar benefits at a reasonable premium and that the conversion be retroactive to February 1, 1988. The group policy was issued to Plaintiff's employer, a company headquartered in Ohio and operated in more than 20 states. The master policy, which includes the certificates given to individual members, was delivered to Plaintiff's employer in Ohio. The policy recites that it is subject to the laws of Ohio.

### Motion for Summary Judgment

Defendants have moved for summary judgment. Under Fed.R.Civ.P. 56(c), a motion for summary judgment must be granted if:

[T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

See also Oliver v. Digital Equipment Corp., 846 F.2d 103 (1st Cir.1988).

Defendants argue that the Maine conversion law, 24–A M.R.S.A. § 2809–A,[3] upon

---

1. Transamerica has assigned its rights and responsibilities under the health insurance contract to Defendant Provident.

2. Defendants' statement of material facts states that the provision under which Plaintiff's coverage was continued was in the group policy. More accurately, the provision was set forth not in the policy itself, but in the insurance certificate provided to Plaintiff, which was made part of the policy by an amendment dated September 1, 1986.

3. Section 2809–A provides in pertinent part:
 1. A group policy which provides hospital, surgical or major medical expense insurance or any combination thereof, other than a policy which provides benefits for specific diseases or accidental injuries only, shall contain a provision that if the insurance on an employee or member ceases because of termination of employment or termination of the policy or any portion thereof, and the person has been continuously insured for a period of at least 3 months under the group policy or under the group policy and any prior group policy or contract providing similar benefits which it replaces, that person shall be entitled to have issued to him by the insurer, without evidence of insurability, an individual policy or, at the insurer's option, a group certificate

which Plaintiff relies, does not apply to the group policy in issue here which was issued and delivered in Ohio. Defendants rely on the enabling legislation for § 2809–A which provides: "This Act shall apply to any contract or policy executed, delivered, issued for delivery, renewed, modified or amended in this State after its effective date." Transition provision. Section 3 of 1983, c. 91. The Court agrees that Maine law is inapplicable to the insurance policy in this case.

■ In addition to providing that the Maine conversion law applies to insurance contracts or policies executed or delivered in Maine, the Maine Insurance Code defines an insurance policy as "the written contract of or written agreement for or effecting insurance, by whatever name called, and includes all clauses, riders, endorsements and papers which are a part thereof." 24–A M.R.S.A. § 2402. The certificates in this case constitute a major portion of the insurance contract. Although they were delivered to individual members[4], they were also delivered to the Plaintiff's employer in Ohio as part of the master policy. In determining the applicability of Maine law, then, the crucial issue for the court is whether the certificates, which have great significance for the contract, constitute an insurance policy or contract, or "effect insurance."[5] A careful reading

of the documents involved indicates that they do not.

Insurance here is plainly effected by the master policy including the certificates. The master policy sets forth standard contract language, in which Defendant Transamerica agrees to pay the benefits described in the policy, that is, in the certificates, in return for certain consideration from the policyholder, Plaintiff's employer. Docket Item 16B, at A–1. The certificates alone do not establish any rights and obligations. While the certificate describes when insurance starts, Docket Item 16C, at 5, receipt of the certificate does not trigger coverage in any sense. *See, Lindstrom v. Aetna Life Insurance Co.,* 203 N.W.2d 623 (Iowa 1973) (delivery of certificates not determinative of applicable law because if the certificates had not been issued, defendants could not assert there was no coverage). The master policy and the certificates are interdependent, neither effecting coverage without the other. The record shows that the two together were delivered to and are on file at Plaintiff's employer's offices in Ohio. There is no suggestion in the record that the master policy, without which there is no contract, was executed, delivered, issued for delivery, renewed, modified or amended in Maine. Therefore, the Maine conversion statute does not apply.

of health insurance, provided that application shall be made and the first premium paid to the insurer within 31 days after that termination. . . .

. . . . .

6. A converted policy issued under this section shall conform to regulations promulgated by the superintendent. These regulations shall ensure that continuity of coverage with similar benefits as determined by the superintendent is provided, but shall not require an insurer to provide benefits in excess of those provided under the group policy from which conversion is made.

4. There remains a question of fact about whether the certificate in this case was delivered to Maine. Because of the Court's resolution of the legal status of the certificate, however, the issue is not material.

5. Defendants have argued correctly that the weight of case authority interpreting similar statutes holds that the applicable law governing

group insurance is that of the state where the master policy is delivered. *See, e.g., Boseman v. Connecticut General Life Insurance Co.,* 301 U.S. 196, 203, 57 S.Ct. 686, 689, 81 L.Ed. 1036 (1937); *Lindstrom v. Aetna Life Insurance Co.,* 203 N.W.2d 623 (Iowa 1973); *Commercial Insurance Co. v. Burnquist,* 105 F.Supp. 920, 931 (N.D.Iowa 1952). The cases have generally rejected plaintiffs' arguments that because a certificate of insurance was delivered to an individual insured in his state of residence, the law of that state applies. *See, e.g., Boseman,* 301 U.S. at 203, 57 S.Ct. at 689; *Lindstrom,* 203 N.W.2d 623. Most of the cases cited are factually different from the one presented here because the insurance certificates issued to members insured under the policy were expressly *not* a part of the policies. In focusing on this fact, however, the courts in the cases cited by defendants conceptualize the issue as Maine law does, asking whether rights and liabilities under the contracts would be the same whether or not the policy required issuance of the certificate to the members. *Id.*

Plaintiff also suggests, however, that there may be a question of material fact concerning what Defendants mean by the term "governing law" in the contract itself. He suggests that the question is raised by a clause in a specimen Major Medical Policy, submitted by Defendants in support of their motion, which provides: "If on its effective date some provisions of this policy are in conflict with the statutes in the state where you live on that date, these provisions are automatically amended to conform to the statutes' minimum requirements." The Court rejects this argument.

The record shows that Defendants offered Plaintiff a conversion policy like one submitted as Docket Item 16D. The specimen Major Medical Policy was included with, although not demonstrably part of, the policy in 16D. The governing law clause in the Major Medical policy, however, is not included in the group health insurance policy now under consideration. The question of which law governs the group health policy first requires reference to the group health policy itself. That policy states explicitly that it is governed by the laws of the state of Ohio. Since there is no ambiguity in the insurance contract on the point, there is no need for extrinsic evidence to construe it. *Portland Valve, Inc. v. Rockwood Systems Corp.*, 460 A.2d 1383 (Me.1983). Provisions in another unrelated contract are, therefore, irrelevant and cannot raise a genuine issue of fact.

### Motion to Dismiss

■ In October, 1989, Plaintiff moved to amend its complaint to add two common law causes of action and to join a party defendant. The Magistrate granted leave to file an amended complaint joining Provident as a Defendant by December 20, 1989, but denied leave to add the proposed common law claims "as they are preempted by ERISA." On December 20, Plaintiff filed an amended complaint which, in addition to adding Provident as a party, also added a count under ERISA.[6] Defendant has moved to dismiss this complaint on the grounds that it fails to state a cause of action or, in the alternative, because the Court did not grant leave to file it. Plaintiff has objected to the motion and has also moved to amend the pleadings as set forth in the second amended complaint.

The Court is aware that leave to amend is to be freely granted. Fed.R.Civ.P. 15; *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). However, a court may look at the allegations in the proposed amendment to see if such amendment would be futile. *Id.* Moreover, the Court of Appeals for the First Circuit has recently held that when a summary judgment motion is pending, a party seeking to amend must show that the proposed amendments have substantial merit and are supported by substantial and convincing evidence. *Torres–Matos v. St. Lawrence Garment Co., Inc.*, 901 F.2d 1144 (1st Cir.1990).

The Court has examined the proposed amended complaint. It contains no new factual allegations but merely alleges that "[t]he decision by the Defendants to cancel Plaintiff's protection under the group health insurance plan as alleged in paragraph 6 above was arbitrary, illegal, capricious, unreasonable, discriminatory and not made in good faith and violates Plaintiff's rights under [ERISA] (29 U.S.C. § 1001, *et seq.*" If by this Plaintiff is alleging that Defendants violated ERISA by not providing him the conversion benefits required under Maine law, his claim cannot succeed. ERISA exempts from its preemptive powers state laws regulating insurance, including laws mandating the inclusion of certain benefits in insurance contracts. 29 U.S.C. § 1144(b)(2)(A); *Metropolitan Life Insur-*

---

**6.** Having moved to amend to bring a claim under ERISA, Plaintiff speculates upon whether ERISA applies to this case. He suggests that a pertinent "factual issue" is whether ERISA applies when Plaintiff's employer, the policyholder, filed for bankruptcy and terminated its business interests, and "[i]f ERISA does not now apply, may Plaintiff pursue state law remedies for breach of contract that would otherwise be preempted by ERISA". Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, at 2–3. The Court notes that these are not factual issues and that the Magistrate has already determined that ERISA applies. *See also Marshall v. Chase Manhattan Bank,* 558 F.2d 680 (2d Cir.1977).

**118**

*ance Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). Therefore, the question of what conversion benefits should have been provided Plaintiff is governed by state law, and the issue has been resolved above.

If Plaintiff suggests that some other aspect of the cancellation was arbitrary or capricious, he has not alleged it. Nor has he alleged any other breach of duties under ERISA. In his memorandum Plaintiff questions "whether the manner of termination without advising Plaintiff of his conversion rights violated either state or federal duties owed to the Plaintiff under ERISA or such state laws as are determined controlling." Plaintiff has not pointed the Court to any specific statutory notice requirements[7] or alleged or asserted any facts which might allow the Court to determine if such a claim has merit. He has done no more than speculate on possible theories, which is not enough to sustain the grant of leave to amend at this stage of the litigation. *Verhein v. South Bend Lathe, Inc.,* 598 F.2d 1061 (7th Cir.1979). Moreover, although the record shows that initially Defendants did not notify Plaintiff of his conversion rights, they offered Plaintiff the conversion policy for medical benefits that it offers in Ohio. He has not alleged any harm caused by the failure to notify. *See Bachelder v. Communications Satellite Corp.,* 837 F.2d 519, 523 (1st Cir.1988). Plaintiff has not shown that the proposed amendment has substantial merit or supported it with any evidence. The Court will, therefore, deny the Plaintiff's Motion to Amend. *See Torres–Matos,* 901 F.2d 1144.

Accordingly, it is ORDERED that Plaintiff's Motion to Amend be, and it is hereby, DENIED.[8] It is FURTHER ORDERED

that Defendants' Motion for Summary Judgment be, and it is hereby, GRANTED.

SO ORDERED.

---

**7.** A recent decision of the Court of Appeals for the Second Circuit holds that state statutes requiring notice of conversion rights, unlike the state conversion requirements themselves, are preempted by ERISA. Therefore, Plaintiff cannot state a claim under state law for Defendants' failure to notify him of his conversion rights. *Howard v. Gleason,* 901 F.2d 1154 (2d Cir.1990).

**8.** Denial of Plaintiff's Motion to Amend renders Defendants' Motion to Dismiss the Second Amended Complaint moot. The Court considers Count I of the Second Amended Complaint, filed on December 20, 1989, to be the amended complaint permitted by the Magistrate, and this order grants summary judgment for the Defendants on that Count.