# Continental Assur. Co. v. Henson.

June 13, 1944.

Wheeler & Shelbourne for appellant.

L. B. Alexander for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

Irene Henson brought this action against the Continental Assurance Company to recover $3,000 under

its group insurance policy No. 429-G issued to the Illinois Central Railroad Company on October 11, 1941. She alleged in her petition that she was the beneficiary named in the certificate delivered by the defendant to W. R. Henson, an employee of the Illinois Central Railroad Company; that W. R. Henson died on August 2, 1942, while the certificate was in force, and proof of claim showing his death had been filed with the defendant as required by the policy. In its answer the defendant denied that the certificate was in force at the time of Henson's death, and in paragraph 2 pleaded affirmatively that Henson made a written application for the certificate on January 20, 1942, in which he was asked certain questions concerning his health, whether he had consulted or been examined by a physician, and whether he had been an inmate of any hospital, sanitarium or asylum. It pleaded also that on March 4, 1942, Henson appeared before a medical examiner for the defendant and was asked and answered certain questions which he agreed in writing would form the basis of the insurance to be issued to him, if any should be granted. In the medical examiner's report he answered ''Yes'' to the question ''Are you now in good health and free from every ailment?'' and to the question ''What physicians and practitioners have you consulted in the past five years?'' he answered ''None.'' It alleged that the answers to the questions in the application and the medical examiner's report were false, material, and fraudulent and were known by the insured to be false and were made with intent to deceive the defendant which issued the certificate in reliance thereon. It was further alleged that if the insured had answered the questions truthfully the defendant, acting in accordance with the usual practice of solvent, reputable insurance companies, would not have accepted the risk or issued the certificate. In paragraph 3 of the answer it was alleged that by reason of the false and fraudulent statements made by the insured the defendant was entitled to a rescission and cancellation of the certificate. Paragraph 3 also contained this allegation:

''It states that it will show, by amended answer and counterclaim filed herein, the amount paid by said insured, W. R. Henson, out of deductions from his wages or otherwise, and that it is ready and willing at all times, and at this time, to pay the amount of premiums received by it from said W. R. Henson to his

Administrator or personal representative, in full settlement of its liability to his estate.''

The defendant filed the original certificate, which had been delivered to it by the plaintiff, and a copy of the group insurance policy. Copies of the application and the medical examiner's report were filed with the answer. The court sustained a demurrer to paragraphs 2 and 3 of the answer apparently on the theory that the insurance policy sued upon was a Kentucky contract and, since the application of W. R. Henson was not attached to either the master policy or the certificate, the defendant is deprived of the defense set up in paragraphs 2 and 3 of the answer by reason of KRS 299.130, which provides that all policies which contain any reference to the application of the insured, shall have the application or the parts thereof relied upon as forming part of the policy or contract, or as having any bearing on the contract, attached to the policy or printed on the face or reverse side thereof, and unless either so attached and accompanying the policy, or printed on the face or reverse side thereof, the same shall not be received as evidence in any action for the recovery of benefits provided by the policy, and shall not be considered a part of the policy or of the contract between the parties. The defendant filed an amended answer in which it alleged that the amount paid by W. R. Henson out of deductions from his wages was $20.08. In a second amended answer it was alleged that the group insurance was issued in Illinois where the chief office of the defendant is located and was delivered to the insured, the Illinois Central Railroad Company, in Illinois where its chief office is located; that the certificate issued to W. R. Henson was issued in the state of Illinois and delivered to the Illinois Central Railroad Company in that state; that the entire contract sued on by plaintiff was made, delivered and to be performed in the state of Illinois; and that all questions presented by the pleadings for determination should be determined according to the laws of that state and not according to the laws of the state of Kentucky. A demurrer to the second amended answer was overruled, and the plaintiff filed a reply in which she traversed the affirmative matter in the answer as amended, pleaded estoppel because of defendant's alleged knowledge of all the facts set forth in its answer and amended answer, and pleaded section 766 of chapter

73 of the Illinois Revised Statutes, which is similar to KRS 299.130.

The defendant's proof showed that the group insurance plan of the Illinois Central Railroad Company had been in effect since November, 1930, though the policy in the Continental Assurance Company was not written until October, 1941. The group policy was applied for by the railroad company at the office of the Continental Assurance Company in Chicago, Illinois. The policy was issued in Chicago and delivered to the railroad company in Chicago, and the original policy is kept by the railroad company in its Chicago office. All employees of the railroad company at the time the group insurance plan went into effect who elected to take insurance under the plan became insured and were issued certificates without medical examinations. The master policy contains this provision.

"Any Employee in service longer than two months and who is not insured hereunder may become insured only upon written application with evidence of insurability satisfactory to the Company and his insurance shall become effective on the first day of the month or the sixteenth day of the month, whichever immediately follows the date insurability is furnished the Company."

W. R. Henson was an employee of the Illinois Central Railroad Company when the group insurance plan went into effect, but he did not seek to take advantage of the plan until January, 1942, and, consequently, was required to make a written application and to submit to a medical examination. Henson was a locomotive engineer on the St. Louis division, and his run extended from Paducah, Kentucky, to Carbondale, Illinois. He lived in Paducah, and he signed the application in Paducah and delivered it there to an employee of the railroad company who forwarded it to the superintendent of the Illinois Central Railroad Company at Carbondale, Illinois, headquarters of the St. Louis division. From there the application and medical examiner's report were sent to W. J. Baader at the office of the Illinois Central Railroad Company in Chicago, who delivered it to the Continental Assurance Company at its office in Chicago. Baader is the head of the Group Insurance Department of the Illinois Central Railroad Company. The Continental Assurance Company issued the certificate to W. R. Henson and delivered it to Mr.

Baader at his office. Mr. Baader sent it to the superintendent of the St. Louis division at Carbondale, Illinois, and he in turn sent it to an employee of the railroad company in Paducah, Kentucky, who delivered it to Henson.

The trial court declined to permit the defendant to introduce in evidence the application or the medical examiner's report or to introduce testimony to establish the falsity of the answers in the application and report. At the conclusion of the evidence the court peremptorily instructed the jury to find for the plaintiff. The appellant contends that the court erred in excluding evidence showing that the insured's answers to questions in the application and medical examiner's report were false and material and in directing a verdict for the plaintiff. The correct determination of the question turns on whether the contract on which the action was instituted was a Kentucky contract or an Illinois contract, and if an Illinois contract whether, under the laws of that state, it was necessary to attach the application to the policy. In accordance with the weight of authority on the subject, this court has held that the group insurance policy issued upon the application of the employer and not the certificate which has been issued to an individual is the actual contract of insurance from which the certificate holder's rights must be measured. Equitable Life Assurance Society v. Austin, 255 Ky. 23, 72 S. W. 2d 716. Cases from other jurisdictions to the same effect are Boseman v. Connecticut General Life Insurance Co., 301 U. S. 196, 57 S. Ct. 686, 81 L. Ed. 1036, 110 A. L. R. 732; Germain v. Ætna Life Insurance Company, 285 Mich. 318, 280 N. W. 773; Watts v. Equitable Life Assurance Society, W. Va., 23 S. E. 2d 923; Smithart v. John Hancock Mutual Life Insurance Company, 167 Tenn. 513, 71 S. W. 2d 1059. The individual certificate is evidence that the person named therein is insured under the master policy. The certificate issued to Henson certified that by group policy No. 429-G issued by the Continental Assurance Company of Chicago, Illinois, covering employees of the Illinois Central System and subject to the terms and conditions of that policy, the life of Henson was insured against death. The certificate merely referred to important provisions of the group policy and contained no promise to pay. It is not claimed that any statement in the certificate conflicts with the provisions of the group policy. In procuring the insurance for the benefit of its employees, the rail-

road company acted as agent of the employees. Mason's Adm'x v. Prudential Insurance Company of America, 291 Ky. 347, 164 S. W. 2d 386; Ætna Life Insurance Company of Hartford v. Gullett, 253 Ky. 544, 69 S. W. 2d 1068; Equitable Life Assurance Society v. Hall, 253 Ky. 450, 69 S. W. 2d 977. Here the application for the group policy was made in Illinois and the policy was delivered in that state. All transactions between the Continental Assurance Company and Henson's agent, the Illinois Central Railroad Company, concerning the certificate took place in Illinois. The final act which bound the parties to the contract was the delivery of the certificate to Henson's agent in Chicago. All acts essential to a completed and binding contract in both instances occurred in Illinois, and it follows that the insurance policy in this case is an Illinois contract. Wedding v. First National Bank of Chicago, 280 Ky. 610, 133 S. W. 2d 931. Restatement, Conflict of Laws, sec. 328. It remains to be determined whether, under the laws of Illinois, it was necessary to attach the application to the policy.

As heretofore stated, section 154 of the Insurance Code of Illinois, adopted in 1937, Illinois Revised Statutes, chapter 73, section 766, is similar to KRS 299.130. However, section 224 of the same Code, Illinois Revised Statutes, chapter 73, section 836, provides:

"(1) After the effective date of this Code no policy of life insurance other than industrial, group or annuities and pure endowments with or without return of premiums or of premiums and interest, shall be issued or delivered in this State, unless the same shall contain in substance the following provisions: * * *

"(c) A provision that the policy, together with the application therefor, a copy of which shall be endorsed upon or attached to the policy and made a part thereof, shall constitute the entire contract between the parties and that after it has been in force during the lifetime of the insured a specified time, not later than two years from its date, it shall be incontestable except for nonpayment of premiums * * *."

Section 231 of the Insurance Code, Illinois Revised Statutes, chapter 73, section 843, reads:

"After the effective date of this Code, no policy of group life insurance shall be issued or delivered in

this State unless it contains in substance the following provisions: * * *

"(b) A provision that the policy, the application of the employer or trustee of any association of employees and the individual applications, if any, of the employees insured shall constitute the entire contract between the parties, and that all statements made by the employer or trustee or by the individual employees shall, in the absence of fraud, be deemed representations and not warranties, and that no such statement shall be used in defense to a claim under the policy, unless it is contained in a written application. * * *"

It will be observed that section 224 of the Code expressly excepts group and industrial insurance from the requirement that the application be attached to the policy. Section 231 requires that a group policy shall contain a provision that the policy, the application of the employer, and the individual applications of the employees insured shall constitute the entire contract of the parties. There is no requirement that the application be attached to the policy, and the implication is to the contrary. Any doubt entertained by us in this respect is dispelled by the decision of an Illinois Appellate Court in Anderson v. John Hancock Mutual Life Insurance Co., 316 Ill. App. 338, 45 N. E. 2d 39, 41. In that case an industrial life insurance policy was involved, but under section 224 of the Insurance Code of Illinois an industrial policy is placed on the same footing as a group insurance policy in so far as the requirement that the application be attached to the policy is concerned. The court said:

"Since there is no requirement in the code or otherwise that applications be attached to policies of this character, we would not be justified in construing the code to include such a requirement.

"In the able brief presented by the plaintiff there are suggestions of the consequences that may ensue from holding that applications need not be attached to policies of industrial life insurance. The conditions contained in a policy are usually in printed form and not readily observed by the average layman after the policy is issued. If the application were attached the questions propounded by the agent and the applicant's answers thereto, touching upon the health, hospitalization

and treatment of the applicant, would more readily be discerned when the policy issued and could be corrected if false or inaccurate. Such procedure would undoubtedly afford greater protection to insured and guard him against possible frauds of agents who usually prepare the applications and who, in some instances, have been known to falsely record the true answers given by the applicants respecting their health. Where the application is not attached to the policy, insured labors under the impression that he is protected by the policy issued to him, and if he dies before the period of incontestability has expired his beneficiary is deprived of the benefits which the insured thought he had. However all these considerations rest with the legislature, and we think it likely that if its attention were called to the evils which may result from the failure of the code to require that applications be attached to the policies, amendments remedying these possible evils may result.''

It follows that evidence as to the falsity of the insured's answers to questions in the application and medical examiner's report was admissible.

It is said by appellee that appellant may not rely on sections of the Insurance Code of Illinois other than section 154, since it failed to plead them or to give notice as required by KRS 422.084. Appellant pleaded and relied upon section 154 of the Illinois Insurance Code, and the record discloses that the trial judge had before him and considered the entire Code. One who pleads and relies upon one section of a statute of another state cannot complain because the court considers other sections of the same statute in aid of its construction of the section pleaded. Under the circumstances, notice to appellee by appellant that it would offer in evidence other sections of the Illinois Insurance Code was not necessary.

It is suggested that the allegations of paragraph 3 of the answer are not sufficient to constitute a tender of premiums paid. At the time the answer was filed the appellant was unable to determine accurately what had been paid by Henson, since only a part of the premium was paid by deductions from his wages. Later an amended answer was filed stating that the amount paid by Henson was $20.08. The amended answer, read in connection with paragraph 3 of the original answer, constituted a sufficient tender, but before the case was

submitted a pleading was offered formally tendering the amount of premiums paid. The tender was timely.

Judgment reversed, for proceedings consistent herewith.